1   TIMOTHY J. YOO (SBN 155531)
    MICHELLE S. GRIMBERG (SBN 217327)
2   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
    10250 Constellation Blvd., Suite 1700
3   Los Angeles, California 90064
    Telephone:   (310) 229-1234
4   Facsimile:   (310) 229-1244
    Emails: tjy@lnbyb.com; msg@lnbyb.com
5
    Attorneys for Plaintiff Stradella Investments, Inc., a California
6   corporation

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                          **SANTA ANA DIVISION**

11

| 12 | In re | Chapter 11 |
|---|---|---|
| 13 | STRADELLA INVESTMENTS, INC. A CALIFORNIA CORPORATION, | Case No. 8:10-bk-23193-RK |
| 14 | | |
| 15 | _____Debtor._____ | Adv. No. _____ |
| 16 | STRADELLA INVESTMENTS, INC., A CALIFORNIA CORPORATION, | **COMPLAINT FOR DECLARATORY RELIEF AND JUDGMENT** |
| 17 | Plaintiff, | **REGARDING (A) EXTENT, PRIORITY AND VALIDITY OF LIEN** |
| 18 | | **AND AMOUNT OF CLAIM; AND (B)** |
| 19 | vs. | **AVOIDANCE OF LIEN AS PREFERENTIAL TRANSFER (11** |
| 20 | RONALD SCHWARTZ, AN INDIVIDUAL; VIRIDIAN INVESTMENTS N.V., A | **U.S.C. §§ 547(b), 550(a), 551, 1107 and 1008)** |
| 21 | NETHERLANDS ANTILLES CORPORATION; VIRIDIAN | |
| 22 | INVESTMENTS SERVICES, LTD., A BRITISH VIRGIN ISLAND CORPORATION | |
| 23 | _____Defendants._____ | |

24

25          Plaintiff, Stradella Investments, Inc., a California corporation, (the "Debtor" or

26   "Plaintiff"), for its complaint, alleges as follows:

27

28

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 151, 157, and 1334.

2.    This adversary proceeding is brought pursuant to Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure.

3.    Venue in this Court is proper pursuant to 28 U.S.C. Section 1409 as this adversary proceeding arises in and relates to a case under Title 11 that is pending in this District.

4.    This is a "core" proceeding as defined by 28 U.S.C. Sections 157(b)(2)(A), (K), and (O).

**THE PARTIES**

5.    Plaintiff is the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case.    Plaintiff is a California corporation that is engaged in the business of investment management.

6.    Plaintiff is informed and believes and based thereon alleges that defendant Ronald Schwartz ("Defendant Schwartz") is and at all relevant times mentioned herein was an individual residing in Riverside County, California and is doing business in the County of Riverside as well as in other counties.    Defendant Schwartz is a real estate developer and a real estate broker. Defendant Schwartz is a judgment creditor as against Plaintiff.

7.    Plaintiff is informed and believes and based thereon alleges that defendant Viridian Investments N.V., at all relevant times mentioned herein was a Netherlands Antilles Corporation ("Defendant Viridian I").    Plaintiff is informed and believes and based thereon alleges that Defendant Viridian I is a secured creditor as against Plaintiff who had loaned the funds for the acquisition of that certain real property located in the City of Rancho Mirage, County of Riverside, California, containing approximately 653 acres (the "Property").

8.    Plaintiff is informed and believes and based thereon alleges that Defendant, Viridian Investments Services, LTD., was at all relevant times mentioned herein and is a British Virgin Island corporation ("Defendant Viridian II").    Plaintiff is informed and believes and based thereon alleges that Defendant Viridian II is the successor in interest for Defendant

2

1  Viridian I.[1]

2  **GENERAL ALLEGATIONS**

3  9.    In or about the late 1970's, a group of investors, including Plaintiff, purchased 60%
4  interest in the Property using funds lent by a wholly-separate entity, namely, Defendant Viridian
5  I. The debts of the original purchasers of the Property to Defendant Viridian I were memorialized
6  and restated by promissory notes issued by Plaintiff and its subsidiaries to Defendant Viridian I in
7  2001.

8  10.    In 2005, ownership/control of the Property was reorganized and clarified with the
9  creation of a limited partnership titled, EIMS Stradella LP (the "Partnership") a California limited
10  liability partnership. Plaintiff is one of the limited partners of the Partnership. The Property was
11  the sole asset of the Partnership. This Partnership was organized with Northwoods Corporation
12  ("Northwoods") as the general partner, and Plaintiff and others as limited partners.

13  11.    On or about 2005, negotiations ensued concerning the sale of the Property to RM
14  Eagle, LLC. In contemplation of the future sale of the Property, on or about December 26, 2005,
15  the partners of the Partnership entered into an agreement (the "Allocation Agreement") which
16  would govern the distribution of any assets received from the sale of the Partnership interests.
17  The Allocation Agreement contemplated that Plaintiff and Northwoods would receive certain
18  payments from the future sale of those interests. Under the Allocation Agreement, Plaintiff and
19  Northwoods were contractually bound to distribute payments from the sale of those interests to
20  Defendant Viridian I, in order to pay down the debts owed to Defendant Viridian I from the
21  original purchase of the Property. A true and correct copy of the Allocation Agreement  is
22  attached hereto as Exhibit "A" and is incorporated herein by this reference and made a part
23  hereof.

24  12.    Section 2.2 of the Allocation Agreement ("Division of the Cash Portion of the
25  Purchase Price and the Participation Payments") contemplates distribution of the proceeds from
26  any disposition of the Property as follows:

27

28  [1] All defendants in this adversary are referred to collectively herein as "Defendants."

3

1    • First, Northwoods would recover its capital contribution (in the amount of
2    about $25,000);

3    • Second, Plaintiff would receive $5,000,000 (which was to be used to pay
4    expenses and debts, with the remainder paid to Northwoods);

5    • Third, Northwoods would receive an additional $250,000;

6    • Fourth, Northwoods would receive the further proceeds and use the same to
7    satisfy the debts owed to Defendant Viridian I; and

8    • Fifth, after the debts to Defendant Viridian I were fully paid off, if any
9    proceeds remained, such proceeds would be distributed to and divided among
10    Northwoods and Plaintiff and its subsidiaries.

11    13.    In March of 2006, the terms of the RM Eagle, LLC's purchase of the Property were
12    finalized and the consideration for the sale of the Property had several components:

13    • $5 million payable at closing;

14    • A "cash" component of $45 million, $20 million of which would be payable at
15    closing, and a Promissory Note for $25 million (the "Note"); and

16    • A profit-sharing component. A true and correct copy of the Note is attached
17    hereto as Exhibit "B" and is incorporated herein by this reference and made a part
18    hereof.

19    14.    Upon execution of the Note, it was delivered to Defendant Viridian I.

20    15.    Plaintiff is informed and believes and based thereon alleges that pursuant to an oral
21    security agreement and because Defendant Viridian I has possession of the collateral (*i.e.*, the
22    Note) from on or about March 21, 2006, it therefore has a valid and enforceable security interest
23    and lien in Plaintiff's assets for the total sum of $59,728,982.36.

24    16.    The sale of the Property to RM Eagle, LLC was a liquidating event for the
25    Partnership. Before the Partnership could distribute the proceeds of this sale among themselves,
26    they had to provide for paying off the creditors of the Partnership.

27    17.    Plaintiff is informed and believes and based thereon alleges that its' main secured
28    creditor was Defendant Viridian I as set forth herein. Prior to the sale of the Property, Defendant

4

1   Viridian I held a lien on the Property secured by a deed of trust. However, RM Eagle LLC had

2   demanded that, in relevant part, all interests in the Partnership be conveyed to RM Eagle LLC

3   with Partnership assets free and clear of liens.

4       18.     RM Eagle LLC refused to be liable for any Defendant Viridian I loans.

5       19.     Therefore, Northwoods, Plaintiff and the other partners of the Partnership provided

6   assurances to and agreed with Defendant Viridian I that, as an existing creditor of the Partnership,

7   Defendant Viridian I would be paid first from the proceeds of the RM Eagle LLC purchase before

8   any of the partners could distribute profits to themselves.

9       20.     Northwoods, Plaintiff and the other partners of the Partnership also agreed that

10  Northwoods shall receive nearly all of the proceeds of the RM Eagle LLC purchase until the

11  debts to Defendant Viridian I were paid off. Northwoods agreed to be responsible for paying off

12  the Defendant Viridian I debts.

13      21.     In exchange for the above consideration, Defendant Viridian I agreed to release the

14  lien on the Property which allowed RM Eagle LLC purchase of the Property to close.

15      22.     After the sale of the Property was closed, the initial proceeds from the sale (totaling

16  $25 million ) were distributed according to the Allocation Agreement. Plaintiff received some $5

17  million at this time, which was used to pay expenses and debts, and the excess was turned over to

18  Northwoods. Plaintiff has not retained any portion of this $5 million.

19      23.     Northwoods received the remaining funds, the vast majority of which were

20  distributed to Defendant Viridian I.

21      24.     Plaintiff is informed and believes and based thereon alleges that the Note must be

22  distributed pursuant to the Allocation Agreement which provides for Defendant Viridian I's debt

23  to be paid off first. Only after such debts are fully paid off, can any proceeds remaining on the

24  Note be divided among Plaintiff and Northwoods. Plaintiff's interest in the Note will arise only if

25  and when proceeds from the Note satisfy the debt to Defendant Viridian I.

26      25.     The basis for Defendant Schwartz's claim arises from an underlying state court

27  dispute between Defendant Schwartz and Plaintiff which centers on Defendant Schwartz's

28  contention that, in relevant part, Plaintiff and Defendant Schwartz entered into a finder's fee

5

1  agreement regarding the sale of the Property. Defendant Schwartz asserted that Plaintiff breached

2  such an agreement when the Property was sold. Plaintiff and Defendant Schwartz submitted this

3  dispute to binding arbitration, and ultimately the arbitrator ruled in Defendant Schwartz' favor.

4  The state court confirmed this award and reduced the award to judgment on or about May 14,

5  2008 (the "Judgment"). This state court action is titled <u>Ronald Schwartz v. Stradella Investments,</u>

6  <u>Inc., a California corporation</u>, Case No. Inc. 076493 currently pending in the Superior Court of

7  the State of California for the County of Riverside, Indio Court.

8        26.    Plaintiff is informed and believes and based thereon alleges that Defendant

9  Schwartz has two judgment liens filed with the Secretary of State as against Plaintiff's assets.

10  The first judgment lien was recorded on July 9, 2009 as Instrument. No. 097202139598 for a total

11  amount of $1,232,071.75. The second judgment lien was recorded on August 2, 2010 as

12  Instrument. No. 107240413294 for a total amount of $1,473,312. Therefore, Defendant Schwartz

13  is also a secured creditor of Plaintiff.

14        27.    To date, the Note valued at $25 million remains outstanding and both Defendant

15  Schwartz and Defendant Viridian I claim a right to this money. The Note will begin to accrue

16  interest on September 30, 2013 at Prime Rate plus 3-1/2% per annum (*i.e.*, around 6.75% at the

17  current rates) potentially generating significant interest each year.

18        28.    Plaintiff is informed and believes and based thereon alleges that Defendant Viridian

19  II is the successor in interest to Defendant Viridian I and may therefore have a claim for the Note

20  in place of Defendant Viridian I.

21        29.    On September 19, 2010 (the "Petition Date"), the Debtor filed a voluntary petition

22  (the "Petition") for relief under Chapter 11 of the Bankruptcy Code. Following the Petition Date,

23  the Debtor continues to operate its business and manage its affairs as a debtor in possession

24  pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

25        30.    On August 2, 2010, within 90 days prior to the Petition Date, Defendant Schwartz

26  recorded a Notice of Judgment Lien with the California Secretary of State. The Notice of

27  Judgment Lien bears file number 107240413294. Prior to recording the Notice of Judgment Lien,

28  (i) Defendant Schwartz provided goods and/or services to the Plaintiff, or (ii) the Plaintiff was

6

1  otherwise indebted to the Defendant Schwartz.  After such debt was created, Defendant Schwartz

2  obtained a judgment and recorded its Notice of Judgment Lien on account of the judgment and

3  obligations.  As such, the recording of the Notice of Judgment Lien was a "transfer" on account

4  of antecedent debts owed by the Plaintiff to the Defendant Schwartz.

5      31.     As set forth above, the amount of this judgment was for $1,473,312.

6      32.     Plaintiff does not dispute that both Defendant Viridian I (or Viridian II) and

7  Defendant Schwartz have valid enforceable secured liens in Plaintiff's assets.  Plaintiff does

8  dispute that the recording of the second financing statement by Defendant Schwartz is valid and

9  enforceable because it occurred within 90 days prior to the Petition Date and constitutes a

10 preference that is voidable under Section 547 of the Bankruptcy Code.  In light of a dispute that

11 arose between the parties, Plaintiff is seeking a judicial determination regarding which of these

12 two secured creditors should be paid and in what amount.

13     33.     As of the Petition Date, the value of the Plaintiff's assets upon which Defendants

14 assert a lien in was less than the combined indebtedness owed by the Plaintiff to Defendant

15 Viridian I and Defendant Schwartz.

16     34.     Plaintiff as a debtor in possession has a right to seek to avoid an asset of the estate

17 as a transfer pursuant to 11 U.S.C. §547 which power is granted to a debtor in possession per 11

18 U.S.C. §§ 1107 and 1108.

19                            **FIRST CLAIM FOR RELIEF**

20     **(For Determination of Validity, Extent and Priority of Defendant's Lien, As to All**

21                                **Defendants)**

22     35.     Plaintiff realleges and incorporates by reference each and every allegation set forth

23 in paragraphs 1 through 34 above, inclusive, as though fully set forth in full.

24     36.     An actual dispute has arisen with respect to the validity, extent and priority of

25 Defendants' liens against the assets of Plaintiff.

26     37.     In addition, an actual dispute has arisen with respect to the actual amount of the

27 pre-petition claim of Defendant Schwartz against Plaintiff.

28     38.     As a result, Plaintiff requests a determination by this Court as to the validity,

7

1    extent and priority of Defendants' liens, and the actual amount of Defendant Schwartz pre-

2    petition claim. Plaintiff also seeks a determination by this Court as to which Viridian defendant

3    Plaintiff is indebted to (*i.e.*, Defendant Viridian I or Defendant Viridian II).

4                          **SECOND CLAIM FOR RELIEF**

5          **(For Avoidance of Preferential Transfers - 11 U.S.C. §§ 547(b) and 550(a), 551**

6                            **Against Defendant Schwartz)**

7          39.    Plaintiff realleges and incorporates by reference each and every allegation set forth

8    in paragraph 1 through 38 above, inclusive, as though fully set forth in full.

9          40.    The recording of the Notice of Judgment Lien dated August 2, 2010 instrument no.

10   107240413294 by Defendant Schwartz constitutes a "transfer" ("Transfer") that is avoidable

11   pursuant to Section 547 of the Bankruptcy Code.

12         41.    The Transfer was of a property interest of the Plaintiff.

13         42.    The Transfer was made to or for the benefit of Defendant Schwartz at a time in

14   which Defendant Schwartz was a creditor of the Plaintiff.

15         43.    The Transfer was for or on account of an antecedent debt owed by the Plaintiff

16   before such Transfer was made.

17         44.    The Transfer was made while the Plaintiff was insolvent.

18         45.    The Transfer was made within 90 days before the date of the filing of the Petition.

19         46.    The Transfer enabled Defendant Schwartz to receive more than Defendant

20   Schwartz would otherwise receive if (a) the Debtor's bankruptcy case was a case under chapter 7

21   of the Bankruptcy Code; (b) the Transfer had not been made; and (c) Defendant Schwartz

22   received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

23         47.    Defendant Schwartz was the initial transferee of the Transfer, or the entity for

24   whose benefit the Transfer was made, or is the immediate or mediate transferee of the initial

25   transferee receiving such Transfer.

26         48.    The Transfer may be avoided pursuant to 11 U.S.C. § 547(b).

27         49.    Pursuant to 11 U.S.C. § 550(a) and to the extent applicable, Plaintiff is entitled to

28   recover the Transfer.

                                        8

50.     The Debtor is entitled to an order and judgment under 11 U.S.C. §547 and 11 U.S.C. §§ 550(a) and 551 that the Transfer is avoided and recoverable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

A.     With respect to the First Claim for Relief, entering a judgment with respect to the validity, extent and priority of Defendants' liens, if any, and determining the actual amount of Defendant's Schwartz claim in this case;

B.     With respect to the Second Claim for Relief, entering a judgment for avoidance of the Transfer and recovery of the Transfer;

C.     With respect to the First Claim for Relief and Second Claim for Relief, entering judgment in favor of Plaintiff and against Defendants for all costs of this action, including, without limitation, all attorneys' fees and costs incurred; and

D.     With respect to the First Claim for Relief and Second Claim for Relief, granting to Plaintiff and against Defendants such other and further relief as the Court deems just and proper under the circumstances herein.

### RESERVATION OF RIGHTS

Plaintiff reserves all of its rights to amend this Complaint as it deems necessary and appropriate, including, without limitation, adding any additional allegations, claims for relief, or prayer for relief.

Dated:  October 1, 2010          STRADELLA INVESTMENTS, INC., A CALIFORNIA CORPORATION

By:___ */s/ Michelle S. Grimberg*___
          Timothy J. Yoo
          Michelle S. Grimberg
          Levene, Neale, Bender, Yoo & Brill L.L.P.
          Attorneys for Plaintiff Stradella Investments, Inc., a California corporation

9

# EXHIBIT A

## ALLOCATION AGREEMENT

**THIS AGREEMENT** is made effective as of the 26th day of December 2005 by, between and among **THE CORPORATIONS LISTED IN SCHEDULE 1**, being all of the partners as of the date hereof of EIMS-Stradella, LP, a California limited partnership.

### PRELIMINARY STATEMENT

A.   The parties are all of the partners as of the date hereof of EIMS-Stradella, LP, a California limited partnership (the "Partnership"), that owns a 60% undivided interest in certain real property located in the City of Rancho Mirage, California (the "Property", as more fully defined in the Sale Agreement referred to in Recital D).

B.   Northwoods Corporation, a Delaware corporation (the "General Partner") is the general partner of the Partnership.

C.   Stradella Investments, Inc., a California corporation ("Stradella, Inc.") and the other parties hereto are currently the limited partners of the Partnership (such other parties being referred to herein as the "Other Limited Partners" and Stradella, Inc. and the Other Limited Partners being referred to herein as the "Limited Partners").

D.   The parties are entering into an agreement with RM Eagle LLC, a Delaware limited liability company ("Buyer") to sell their respective interests in the Partnership to Buyer in consideration for certain payments and otherwise in accordance with the terms of that certain Agreement for the Purchase and Sale of Partnership Interests and Joint Escrow Instructions of even date herewith (the "Sale Agreement") and other documents provided for and referred to therein (the Sale Agreement and such other documents being referred to herein as the "Sale Documents").

E.   Pursuant to the Sale Agreement, the parties are to receive certain payments in cash on or before closing (the "Cash Portion of the Purchase Price") and certain payments thereafter ("Participation Payments").

F.   The parties desire to make supplemental provision regarding the entitlement of each of the parties to the payments of purchase price that may be received by the parties under the Sale Documents.

### AGREEMENT

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION,** the amount and sufficiency of which each of the parties acknowledges, it is hereby agreed as follows:

**1.   Meaning of Terms**

In this Agreement, all capitalized terms that are defined in the Sale Documents and are not otherwise defined herein shall have the same meaning as in the Sale Documents but the parties shall not be bound by any interpretation thereof made or proposed by Buyer.

Page 1 of 9

allocation agreement v2.2.doc

EXHIBIT "1" - Page 43

## 2.   Disposition of the Purchase Price

### 2.1   Background

Under the Sale Agreement, the parties are responsible for repayment of certain obligations of the Partnership based on provisions of the Sale Agreement, in particular Sections 4.4(e) and (f) thereof, that require the parties to deliver to Buyer the Indemnity Agreement and the LP Note Release. Consistently with the Partnership Agreement, the Partnership has assumed the liability of the Limited Partners to Viridian Investments N.V. ("Viridian") under the LP Notes and Viridian has certified that the amount that will be due as of December 31, 2005 in accordance with an Estoppel Certificate dated as of October 20, 2005.

### 2.2   Division of the Cash Portion of the Purchase Price and the Participation Payments

The parties hereby agree that the Cash Portion of the Purchase Price and the Participation Payments shall be divided among the parties as follows, notwithstanding any provision of the Sale Agreement to the contrary:

(a) First, to the General Partner an amount equal to the positive balance of the General Partner's capital account plus interest on such balance from October 20, 2005 through the date of payment. The interest rate on such balance shall be 10% per annum compounded on December 31, 2005 and annually thereafter.

(b) Second, a sum, not to exceed $5,000,000 less the amount described in Section 2.2(a) above shall be paid to Stradella, Inc. and Stradella, Inc. shall in turn use such sum to pay or reserve (1) the amount of all of obligations of the Limited Partners previously incurred by them with respect to the Property and not assumed by the Partnership, including any obligations to individual members of the Boroumand family for services rendered in connection with the Property; (2) all amounts previously advanced by the Limited Partners or any of them to pay expenses in relation to the Property and not heretofore reimbursed; and (3) an amount of future expenses not to exceed $500,000 on account of future legal, accounting and other expenses relating to the Property and the sale of the interests of the parties in the Partnership pursuant to the Sale Agreement. Such amounts are referred to collectively as the "Expenses".

(c) Third, the General Partner shall receive the sum of $250,000.

(d) Fourth, the General Partner shall receive an amount not exceeding the amount due to Viridian certified as described in Section 2.1 plus interest thereon from January 1, 2006. The General Partner acknowledges that it is responsible for all payments due to Viridian under the LP Notes.

(e) Fifth, the balance shall be divided among the parties as to 0.15% to the General Partner and as to 99.85% to the Limited Partners, to be further divided among them in accordance with the percentages set forth in the third column of SCHEDULE 1.

Page 2 of 9

allocation agreement v2.2.doc

### 2.3  Payment Mechanism

(a)  The parties shall direct Buyer to pay to Stradella, Inc. the first $5,000,000 due to the parties under the Sale Agreement. Stradella, Inc. shall pay the Expenses out and thereafter promptly pay to the General Partner any amount by which $5,000,000 exceeds the Expenses, other than Expenses, not to exceed $500,000, described in Section 2.2(b)(3), which Stradella, Inc. may retain and deal with as hereinafter provided.

(b)  The parties shall direct Buyer to pay to the General Partner the Cash Portion of the Purchase Price less any amounts paid to Stradella, Inc. in accordance with the preceding paragraph. The General Partner shall pay or apply the amounts so received in accordance with Section 2.2 above and the timing requirements of Section 2.5 below.

(c)  After receipt of the balance of the Cash Portion of the Purchase Price from Buyer, the General Partner and Stradella, Inc. (acting for itself and for the Other Limited Partners) shall determine the amount that remains due to Viridian under the LP Notes (the "Viridian Balance"). Stradella, Inc. shall pay all amounts received as Participation Payments:

(1)  To the General Partner until the amount paid to the General Partner under this subparagraph (1) equals the Viridian Balance plus interest on the Viridian Balance at 10% per annum compounded annually on December 31 in each year; and

(2)  Any remaining balance as to 0.15% to the General Partner and as to 99.85% to Stradella, Inc. on behalf of the Limited Partners. The General Partner shall use any amounts received under subparagraph (1) to pay to Viridian any amounts due with respect to the Viridian Balance.

(d)  The General Partner shall not be responsible to the Limited Partners for any payments due to them under this Agreement, except to the extent of funds actually received by the General Partner in excess of its entitlement hereunder.

### 2.4  Accounting by Stradella, Inc.

(a)  Stradella, Inc. shall provide to the General Partner and the Other Limited Partners a full and prompt accounting of the Expenses and shall pay the amounts to the persons to whom they are due. Such accounting shall be due:

(1)  Not later than forty-five (45) days following the signature of the Sale Agreement.

(2)  On the 15th day following the close of each quarter beginning June 30, 2006 so long as the balance of the amount held by Stradella, Inc. under Section 2.2(b) exceeds $10,000.

(3)  Not later than thirty (30) days following the end of the month in which the amount held by Stradella, Inc. under Section 2.2(b) is reduced to zero.

Page 3 of 9

allocation agreement v2 2 doc

(b) The accounting may be in abbreviated form for any period where Stradella, Inc, has not paid any Expenses and may consist of a statement that no Expenses were paid and confirming the balance held by Stradella, Inc.

(c) Stradella, Inc. shall be entitled to retain any interest earned on amounts so held but shall not charge (nor permit any of its officers to charge) any fees or other compensation for any services in relation to such amounts.

(d) The General Partner or any of the Other Limited Partners may inform Stradella, Inc. within thirty (30) days if they or any of them disputes any accounting of any amounts due to them under Section 2.2(b)(2) and Stradella, Inc. and the Limited Partners in question shall promptly resolve the dispute. Subject thereto, the General Partner and the Other Limited Partners may not dispute any accounting by Stradella, Inc.

## 2.5    Timing

Any cash received by the General Partner in accordance with Section 2.3 shall be applied by the General Partner as follows:

(a) First, the General Partner shall retain for itself the sum of $125,000 plus the sum of its capital account as of the date of the Purchase Agreement plus interest thereon through the date the General Partner becomes entitled to retain such sum. The interest rate is 10% per annum compounded on December 31, 2005 and annually thereafter.

(b) Second, the General Partner shall retain the balance of any amounts received by the General Partner that are attributable to the Deposit and the First Cash Portion Payment and shall be responsible from such balance for payment of any amounts due to Viridian.

(c) Third, the General Partner shall out of any additional amounts received by it pursuant to Section 2.3(c)(1) retain for itself the sum of $125,000 and be responsible for the payment of the Viridian Balance including interest thereon.

(d) Fourth, the General Partner shall retain 0.15% of any remaining cash it may receive and shall account for the balance to Stradella, Inc. on behalf of the Limited Partners.

Any cash received by Stradella, Inc. not paid or received under Section 2.2 shall be divided among Stradella, Inc. and the other Limited Partners in accordance with Section 2.2(e).

## 3.    Priorities ad Responsibilities

## 3.1    Payments by Buyer Not in Accordance with This Agreement

In the event that Buyer shall pay any of the parties an amount so that it is received in a manner inconsistent with this Agreement, the party receiving such amount shall promptly account for and pay over the same to the party that should have received the amount so

Page 4 of 9

allocation agreement v2.2.doc

EXHIBIT "1" - Page 46

that the same may be disposed of in accordance with the provisions of this Agreement.

### 3.2 Responsibility of Stradella, Inc.

Stradella, Inc. shall be solely responsible for payment to the Other Limited Partners of amounts due to them and the General Partner shall have no responsibility to see that Stradella, Inc. makes such payment to the Other Limited Partners.

### 3.3 Priority

In the event of any inconsistency in the application of the provisions of this Agreement, the parties agree that the primary operative provision of this Agreement is Section 2.2 and the remaining provisions are intended to address handling of cash and timing and shall therefore be treated as subordinate to Section 2.2.

### 4. Miscellaneous

### 4.1 Notices

All notices, demands, consents, approvals, requests or other communications which any of the Parties may desire or be required to give hereunder ("Notices") shall be in writing and shall be given by (i) personal delivery; (ii) certified mail return receipt requested (or equivalent) or an internationally recognized air courier service, postage or fees prepaid, addressed in accordance with SCHEDULE 1. A party (or the designated recipients of courtesy copies) may change or supplement any of the details in the second and third columns of SCHEDULE 1 by notice to the other parties.

Notices may also be given by facsimile transmission to any party who lists a facsimile number or by electronic mail to any party who indicates a willingness to receive Notices by such means. Notices given by mail shall be deemed to have been given on the fourth business day following the date of mailing within the recipient's country or seven business days following the date of mailing in a different country. Notices given by courier service will be deemed to have been given on the actual date of delivery thereof as recorded by the courier service. Notices given by facsimile or e-mail shall be deemed given upon acknowledgment of receipt by the recipient.

### 4.2 Time is of the Essence

Time is of the essence with respect to each and every obligation herein.

### 4.3 Successors and Assigns; No Third Party Benefit; Delegation

This Agreement shall be binding upon and inure to the benefit of the undersigned and their respective heirs, legal representatives, successors and assigns and nothing in this Agreement is intended to benefit any other person. The rights under this Agreement shall not be assigned or transferred without the prior written consent of the other parties hereto. No party may delegate its obligations under this Agreement except that Stradella, Inc. may delegate such obligations to its parent company (being defined as a legal entity that

Page 5 of 9

allocation_agreement_v2.2.doc

owns 100% of all classes of voting securities) if it shall merge by any means with such parent company and such parent company is the survivor in such merger.

### 4.4   Governing Law and Venue

This Agreement shall be construed under and enforced in accordance with the laws of the State of California, without regard to any provision of such laws that would require the application of any other law. Each party hereby consents to the non-exclusive jurisdiction of the state courts of and the Federal courts located in the State of California over any dispute arising out of or in connection with this Agreement and each agrees not to object to the laying of venue in such courts.

### 4.5   Agreement Not to Be Construed Against the Drafter

The undersigned parties each cooperated in the preparation of this Agreement. Thus, the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party as the drafter thereof.

### 4.6   Further Acts and Assurances

Each party agrees to make, execute, deliver and perform its obligations under such other instruments or documents, and to do or cause to be done such further or additional acts, as reasonably may be necessary in order to effectuate the purposes or to implement the terms of this Agreement.

### 4.7   No Waiver

No waiver of any breach of any term or provision of this Agreement shall be construed to be, nor shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. No failure by a party to exercise a right under this Agreement shall be deemed to be a waiver of such right.

### 4.8   Survival

The representations, warranties and covenants contained in this Agreement are deemed to and shall survive the execution and delivery of this Agreement.

### 4.9   Headings

All headings and captions in this Agreement are included for convenience and reference only and shall not constitute a part of this Agreement for any purpose.

allocation agreement v2.2.doc

EXHIBIT "1" - Page 48

### 4.10  Counterparts

This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which shall constitute one and the same agreement, provided each signing party (or Stradella, Inc. on behalf of the Other Limited Partners) shall have received a copy of the signature page signed by every other party.

### 4.11  Facsimile

A facsimile or electronic copy (in PDF or similar format) of an executed version of this Agreement (or any signature hereto) shall be fully-enforceable as if it were an original of the same.

### 4.12  Invalid Provisions

If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable. In lieu thereof, there shall be added a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

### 4.13  Entire Agreement

This Agreement contains the complete and entire agreement between the parties with regard to the matters set forth in it and supersedes all prior discussions, agreements, and understandings whether oral or written between or among the parties.

### 4.14  Amendments

This Agreement may not be modified, changed, contradicted, added to, or altered in any way by any previous written or oral agreements or any subsequent oral agreements. This Agreement may be modified or amended only pursuant to an instrument in writing, executed and delivered on behalf of each party.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective as of the date first set forth above.

Page 7 of 9

allocation agreement v2.2.doc

EXHIBIT "1" - Page 49

"General Partner":

**NORTHWOODS CORPORATION,** a Delaware
corporation

By: _____
      Julie A. Gilbert, President
"Stradella, Inc."

**STRADELLA INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

"Other Limited Partners"

**SARBONNE INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

**SPIROS INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

**SAVONA INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

**SANDAL INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

**TORTUOSO INVESTMENTS, INC.**
a California corporation

By: _____
      Abdolrashid Boroumand, President

Page 8 of 9

allocation agreement v7.7.doc

EXHIBIT "1" - Page 50

**TAVISTOCK INVESTMENTS, INC.**
a California corporation

By: _Abdolrashid Boroumand, President_

Page 9 of 9

allocation agreement v2 2 doc

EXHIBIT "1" - Page 51

**SCHEDULE 1. The Parties**

| Name | Address | Percentage |
|---|---|---|
| THE GENERAL PARTNER: | | |
| Northwoods Corporation | 11999 San Vicente Boulevard, Suite 440 Los Angeles, CA 90049. | |
| THE LIMITED PARTNERS: | | |
| Stradella Investments, Inc. | c/o Abdolrasid Boroumand 28312 Avenida La Mancha San Juan Capistrano, CA 92675 | 54.167% |
| Sandal Investments, Inc. | c/o Stradella Investments, Inc., as above | 8.333% |
| Savona Investments, Inc. | | 8.333% |
| Sarbonne Investments, Inc. | | 8.333% |
| Spiros Investments, Inc. | | 8.333% |
| Tavistock Investments, Inc. | | 8.333% |
| Tortuoso Investments, Inc. | | 4.167% |

allocation agreement v2.2.doc

**STRADELLA INVESTMENTS, INC.**
28312 Avenida La Mancha
San Juan Capistrano, CA 92675

December 26, 2005

Northwoods Corporation
Attn: Julie A. Gilbert, Esq.
11999 San Vicente Boulevard, Suite 440
Los Angeles, CA 90049

Ladies and Gentlemen:

This letter supplements that certain Allocation Agreement of even date herewith (the "Agreement"). It is hereby agreed that all of the funds paid to Northwoods Corporation in accordance with Section 2.3 of the Agreement shall be deposited in a segregated interest-bearing account in the name of Northwoods Corporation with a financial institution that is primarily regulated by the United States of America and insured by the Federal Deposit Insurance Corporation and that two signatures shall be required for any check or payment instruction with respect to such account, one of which shall be that of Abdolrashid Boroumand.

Stradella, for itself and its subsidiaries, shall not, however, have any claim against Northwoods Corporation arising out of or in connection with any check or payment made by Northwoods Corporation not in compliance with this letter if such check or payment is in fact made to the person properly entitled thereto under the Agreement or if made to Viridian Investments N.V.

Nothing in this letter is intended to affect the entitlement of any party to the Agreement to any amounts received as mentioned therein. The sole purpose is to assure that funds are handled as contemplated in accordance with the obligations of the parties.

Very truly yours,

**STRADELLA INVESTMENTS, INC.**
a California corporation

By:    _A. Abdolrashid Boroumand_
      Abdolrashid Boroumand, President

Accepted and agreed:

**NORTHWOODS CORPORATION**
a Delaware corporation

By:    _____
      Julie Gilbert, President

EXHIBIT "1" - Page 53

# EXHIBIT B

## SECURED PROMISSORY NOTE

$25,000,000.00

Newport Beach, California
March 14, 2006

1.   Promise to Pay.  For valuable consideration, the
receipt and sufficiency of which are conclusively acknowledged,
RM EAGLE LLC, a Delaware limited liability company ("Maker")
promises to pay to the order of NORTHWOODS CORPORATION, a
Delaware corporation (the "General Partner"), STRADELLA
INVESTMENTS, INC. ("Stradella, Inc."), SARBONNE INVESTMENTS,
INC., SPIROS INVESTMENTS, INC., SAVONA INVESTMENTS, INC., SANDAL
INVESTMENTS, INC., TORTUOSO INVESTMENTS, INC. and TAVISTOCK
INVESTMENTS, INC., all California corporations (collectively,
"Holder"), the sum of Twenty Five Million and No/100 Dollars
($25,000,000.00) without interest, except as provided below,
payable as follows:

a.   Interest shall commence on the fifth (5th)
anniversary of the date (the "Interest Commencement Date") upon
which Maker is obligated to file a "Partition Action" as
provided for, and defined in Section 5.2 of that certain
Agreement for the Purchase and Sale of Partnership Interests and
Joint Escrow Instructions, dated as of February 21, 2006, by and
between Maker as "Buyer" and Holder as "Sellers" (the "Purchase
Agreement").  Capitalized terms used, but not otherwise defined,
herein shall have the same meanings as in the Purchase Agreement.
Until the Interest Commencement Date, no interest shall accrue
on this Note and no payments of interest shall otherwise be due.
Following the Interest Commencement Date, interest only shall
thereafter be payable quarterly in arrears, beginning on the
first (1st) day of the first (1st) calendar quarter following
the Interest Commencement Date, and on the first (1st) day of
each calendar quarter thereafter.  Interest due for any partial
quarter shall be prorated for such quarter based upon the actual
number of days that elapse in such partial quarter.  The
interest rate (the "Interest Rate") used to calculate the
payment due on any given payment date shall be calculated using
(i) the Prime Rate announced on the day immediately preceding
the date upon which any payment is due, plus (ii) three and one-
half percent (3½%) per annum; provided, however, that in no
event will the Interest Rate exceed fifteen percent (15%) per
annum.

b.   The entire unpaid principal balance of this Note
shall be due and payable on either of the Total Property
Acquisition Date or the 60% Acquisition Date (as such terms are
more particularly defined in Section 2.1 of the Purchase

1

1504840.6
10218-00005

Agreement) and shall be distributed to Sellers in accordance with the terms contained therein.

2.   Application of Payments.  All payments received by Holder shall be applied in the following manner:  first, to the payment of any amounts owing to Holder on account of any fees or charges arising under, or advances made by Holder pursuant to, the provisions of this Note; second, to the payment of accrued, unpaid interest; third, to the payment of unpaid principal.

3.   Place and Time.  Maker shall make all payments in lawful money of the United States.  Maker shall deliver 0.15% of each payment to the General Partner, at 11999 San Vicente Boulevard, Suite 440, Los Angeles, California 90049.  Maker shall deliver the balance of each payment to Stradella, Inc. for distribution to the Limited Partners.  Maker shall have no responsibility to see that Stradella, Inc. makes such distributions to the Limited Partners.  If any payment to be made hereunder will become due and payable on a day other than a business day, then such payment shall be made on the business day next following the day on which such payment would otherwise have been due.

4.   Waivers.  Maker hereby waives diligence, presentment for payment, demand, protest, notice of nonpayment, notice of dishonor, notice of protest, and any and all other notices and demands whatsoever.  Maker agrees to remain bound until the principal and interest payable hereunder are paid in full, notwithstanding any extensions or renewals granted with respect to this Note, the release of any party liable hereunder or the release of any security now or hereafter securing this Note.

5.   Security.  This Note is secured by a deed of trust, dated on or about even date herewith (the "Deed of Trust"), executed by Maker, as trustor, in favor of Holder, as beneficiary, encumbering certain unimproved real property located in the City of Rancho Mirage, County of Riverside, State of California (the "Property").

6.   Acceleration.  If Maker fails to pay any amounts due hereunder when due or otherwise defaults under any provision of this Note, such failure or default shall be a default under this Note and Holder may, at its option, accelerate and make immediately due and payable the entire principal balance owing on this Note and all accrued, unpaid interest, without demand or notice to Maker.

2

7.  <u>Cost of Enforcement</u>.  If Maker fails to pay any
amounts due hereunder when due, or if Maker otherwise defaults
under this Note, then Maker shall pay all costs of enforcement
and collection, including, without limitation, reasonable
attorneys' fees and costs, whether or not enforcement and
collection includes the filing of a lawsuit, and whether or not
that lawsuit is prosecuted to judgment.

8.  <u>No Waiver by Holder</u>.  No delay or omission on the part
of Holder to exercise any of its remedies hereunder, including,
without limitation, the acceleration of the due date of this
Note, shall be deemed a continuing waiver of that right or any
other right.

9.  <u>Usury Savings</u>.  Maker and Holder intend to contract in
compliance with all state and federal usury laws governing the
loan evidenced by this Note.  Holder and Maker agree that none
of the terms of this Note shall be construed to require payment
of interest at a rate in excess of the maximum interest rate
allowed by any applicable state or federal usury laws.  If
Holder receives sums which constitute interest that would
otherwise increase the effective interest rate on this Note to a
rate in excess of that permitted by any applicable law, then all
such sums constituting interest in excess of the maximum lawful
rate shall at Holder's option either be credited to the payment
of principal or returned to Maker.  The provisions of this
paragraph control the other provisions of this Note and any
other agreement between Maker and Holder.

10.  <u>Binding Nature</u>.  The provisions of this Note shall be
binding upon and inure to the benefit of the successors and
assigns of Maker and Holder.

11.  <u>Prepayment</u>.  Maker may at any time prepay all, or any
portion, of the principal balance due under this Note without
penalty.  Any such prepayment shall be credited as set forth
above in Paragraph 2.

12.  <u>California Law</u>.  This Note shall be governed by and
construed according to California law.

13.  <u>Severability</u>.  All provisions hereof are severable.
If any provision hereof is declared invalid for any reason, that
invalidity shall not affect any other provision of this Note,
all of which shall remain in full force and effect.

14.  <u>Cumulative Rights</u>.  All rights and remedies granted to
Holder hereunder shall be separate and cumulative, and in

3

1504840.6
10218-00005

addition to any other rights Holder may have at law or in
equity.

[*Signature Page Immediately Follows*]



4

1504840.6
10218-00005

Maker has duly executed this Note as of the date set forth
in the upper right hand corner on the first page of this Note.

"MAKER"

RM EAGLE LLC,
a Delaware limited liability company

By:  SME MANAGEMENT, INC.,
     a Delaware corporation
Its: Manager

By: _____
     Name:  Randall Bone
     Title: President

Signature Page

1504840.6
10218-00005